IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH ASHFORD | No. 3:11-CV-1060 |
| Petitioner | (JUDGE NELSON) |
| vs. | |
| MIKE WENEROWICZ, ET AL., | (Magistrate Judge Smyser) |
| Respondents | |

### RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS

AND NOW, comes the Office of the District Attorney, County of York, Pennsylvania, by and through Senior Deputy Prosecutor Duane Ramseur, and states the following in support of the Response to the Petition for Writ of Habeas Corpus:

For the sake of clarity, Respondent will dispense with a seriatim response.

### BACKGROUND

1) This petition stems from a conviction in Pennsylvania Criminal Case number CP-67-CR-0002467-2008, where on May 12, 2009, the jury found the Petitioner guilty of Criminal Attempt to Commit Burglary, Criminal Attempt to Commit Criminal Trespass, Possession of an Instruments of Crime, Institutional Vandalism, and Criminal Mischief. (Respondent's Reproduced Record (hereinafter "RRR") at 261-62).

2) At approximately 3:10 am on March 17, 2008, Corporal Brady (hereinafter "Brady") observed the Petitioner walking around the loading dock of the York County Judicial Center, which is located in the back of the building. (RRR at 77,80).

3) Corporal Brenneman (hereinafter "Brenneman") was working in the control room when Corporal Brady told Brenneman was occurring, and as a result, Brenneman, using a joystick,

which controlled the camera located in the area where the Petitioner was observed, panned the camera to the Petitioner's location and watched the Petitioner on the monitor. (RRR at 81).

4) Brenneman observed the Petitioner back into the space between the wall and the generator and he looked around to make sure no one was around. (RRR at 82).

5) The Petitioner was wearing blue jeans, a black sweatshirt with a hood and glasses. (RRR at 83).

6) The Petitioner then began looking into the windows of the Sheriff's Department. (RRR at 84).

7) It was at this point, Brenneman observed the Petitioner walk towards the back door and reach into the pocket of his hooded sweatshirt and pull out a skinny tool, which he learned later to be a screwdriver. (RRR at 84).

8) Brady left the control room to see what the Petitioner was up to. (RRR at 84).

9) In order to let Brady outside, Brenneman had to push the button on the secured door so that Brady could get out to the loading dock. (RRR at 86).

10) Brenneman observed the Petitioner kneel down with the tool in hand and began to pry the door with the tool. (RRR at 87).

11) Brenneman stated that the Petitioner was able to get the bottom of the door open. (RRR at p. 87).

12) Not soon after the Petitioner pried the bottom of the door to the York County Judicial Center open did Brady take the Petitioner into custody. (RRR at 88).

13) Corporal Ciprian Igwe (hereinafter "Igwe") observed Brady take the Petitioner into custody (RRR at 127).

14) While on scene, Igwe collected eyeglasses, a hat, and a screwdriver that were found between the two doors at the scene. (RRR at. 126).

15) This evidence was turned over to Brenneman (RRR at 90).

16) At the conclusion of the trial, the Petitioner was found guilty of all the crimes charged. (RRR at 261).

17) On May 12, 2009, the Petitioner filed a Motion for Arrest of Judgment. (RRR at 272-73).

18) The Trial Court entered an order on May 26, 2009 returning the Petitioner's motion to him because Attorney Ronald Gross represented the Petitioner. (RRR at 279).

19) On June 12, 2009, the Petitioner filed a supplemental motion and the Trial Court scheduled a hearing on the Petitioner's motion for June 29, 2009. (RRR at 280).

20) At the conclusion of the hearing on June 29, 2009, the Trial Court granted Attorney Gross' request to withdraw from the case and the Petitioner continued pro se. (RRR at 292).

21) On July 6, 2009, the Petitioner was sentenced to 5 ½ to 11 years in a state correctional institute. (RRR at 301).

22) The Petitioner then filed a post sentence appeal motion and a motion in arrest of judgment on July 8, 2009, which was filed again on July 20, 2009. (RRR at 330).

23) However, the Petitioner's Notice of Appeal was filed on June 29, 2009. (RRR at 308).

24) The Petitioner filed his Statement of Matters Complained of on Appeal on or about August 27, 2009. (RRR at 340).

25) The Trial Court issued its 1925(a) Opinion on or about October 8, 2009, wherein the Trial Court addressed the issues raised by the Petitioner in his post sentence motions. (RRR at 346).

26) On November 22, 2009, the Petitioner filed a Motion for Extension of Time to file his brief

with the Pennsylvania Superior Court Claiming that the Petitioner did not have copies of the transcripts. (RRR at 358).

27) The Pennsylvania Superior Court granted the Petitioner's request and remanded the case to the Trial Court on January 13, 2008. (RRR at 364).

28) The Trial Court issued an order on January 28, 2009 directing the York County Clerk of Courts and Attorney Ronald Gross to provide the Petitioner copies of the documents requested (RRR at 365).

29) On June 23, 2010, the Petitioner appeal was dismissed for failure to file a brief. (RRR at 366).

30) The Petitioner filed a Petition for Allowance of Appeal Nunc Pro Tunc, which is docketed at 192 MM 2010, which was denied on February 10, 2011. (RRR at 368).

31) This Petition for Writ of Habeas Corpus followed. (RRR at 369).

### **RESPONDENT'S RESTATEMENT OF ISSUES**

1. Whether the Petitioner's claims have not been exhausted and/or are procedurally defaulted?

   Respondent asserts that all the claims below have not been exhausted and/or are procedurally defaulted.

2. Whether trial counsel was ineffective for not objecting to the authenticity or the alterations performed on the original VHS surveillance tape?

   Respondent denies such allegation.

3. The Commonwealth violated the Petitioner's speedy trial rights when the Commonwealth failed to bring the Petitioner to trial within 365 days?

   Respondent denies such allegation.

4. Whether Commonwealth failed to turn over exculpatory evidence to the Petitioner?

   Respondent denies such allegation.

5. Whether the Commonwealth tampered with physical evidence?

Respondent denies such allegation.

6. Whether direct appeal counsel was ineffective?

Respondent denies such allegation.

## ARGUMENT IN RESPONSE TO THE PETITIONER'S WRIT OF HABEAS CORPUS

### I. HAVE THE CLAIMS RAISED BY THE PETITIONER BEEN EXHAUSTED AND/OR ARE THE PETITIONER'S CLAIMS PROCEDURALLY DEFAULTED?

Before the merits of a Petition for Writ of Habeas Corpus can be analyzed, the Court must ensure that all claims raised therein have been fairly presented to each level of the state's courts. 28. U.S.C. § 2254 (b); *see also* Lines v. Larkins, 208 F.3d 153 (3d Cir. 2000). With limited exception, a federal court will not address the merits of any claim raised by a petitioner that was not properly exhausted in state court. Lines, supra, at 159. "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights." Id. Petitioner carries the burden of establishing that his claims have been exhausted in state courts. Id. To the extent that a petitioner fails to properly present a claim before the state courts, federal courts will dismiss those claims without prejudice, allowing the petitioner to exhaust those claims. Id. at 159-60.

All of the claims raised by the Petitioner were raised in the Trial Court and in the Pennsylvania Superior Court; however, the Superior Court did not reach the merits of the Petitioner's claims because the Petitioner's appeal was dismissed for failure to file a brief. Due to the Petitioner's failure to fully pursue these issues in state court, they have not been fully exhausted. As such, Respondent requests that the Petitioner's claims be dismissed without a hearing.

Moreover, A claim before a federal court is procedurally defaulted where a petitioner exhausted issues because of state procedural bar. Lines v. Larkins, 208 F.3d 153, 159-60 (3d Cir. 2000). As stated above, the Petitioner's claims were raised in the Trial Court and in his direct appeal to the Pennsylvania Superior Court, however, the Superior Court did not reach the merits of the issues raised by the Petitioner because he failed to file a brief as directed. Nothing prevented the Petitioner from filing his brief. Additionally, the Petitioner could have filed a state PCRA petition, considering the fact that the Petitioner made allegations that his trial counsel was ineffective. However, the Petitioner failed to do so. Nothing prevented the Petitioner from filing a state PCRA petition. Pursuant to Pennsylvania State law, the Petitioner had one year from the date his sentence became final to file his state PCRA petition. *See* 42 PA. CONS. STAT. ANN. § 9545(b). In this case, the Petitioner's sentence became final on June 23, 2010, when the Petitioner's direct appeal was dismissed for failure to file a brief. *See* Commonwealth v. Alcorn, 703 A.3d 1054 (Pa. Super. Ct. 1997). That means the time for the Petitioner to file his state PCRA petition expired on June 23, 2011. Therefore, the Petitioner's claims would be deemed waived under Pennsylvania law. 42 PA. CONS. STAT. ANN. § 9544(b); Alcorn, *supra*, Commonwealth v. Peterkin, 538 Pa. 455, 649 A.2d 121 (1994); Commonwealth v. Roman, 730 A.2d 486 (Pa. Super. 1999); Commonwealth v. Robinson, 682 A.2d 831 (Pa. Super. 1996).

Claims deemed exhausted because of state procedural bar are procedurally defaulted, and federal courts may not consider their merits unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default. Id. For this purpose, cause means that the Petitioner must demonstrate that "some objective factor external to the Petitioner impeded [his] effort" to pursue the claim in state court. Murry v. Carrier, 77 U.S. 478,

488 (1986). Petitioner has not pleaded any facts that would have prevented him from raising these claims in state court.

To establish "miscarriage of justice," also called "actual innocence," the Petitioner is obligated to show that the constitutional error as to which he seeks review resulted in the conviction of an innocent man. Bousley v. U.S., 523 U.S. 614, 623 (1998). In this context, innocence means actual innocence, not mere legal insufficiency. Id. A petitioner is required to produce new evidence that was not presented at his trial, which demonstrates that "it is more likely than not that no reasonable [trier of fact] would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 324 (1995). Actual innocence is not a substantive claim, but is instead a procedural gateway for permitting a court to entertain a claim or claims that otherwise would not be heard because they were procedurally defaulted. *See*, Herrera v. Collins, 506 U.S. 390 (1993).

Here, there is no argument put forth by the Petitioner that alleges an exception to the procedural default rule. Therefore, the miscarriage of justice exception to the procedural default rule has not been satisfied. Accordingly, Respondent requests that all of the claims raised by the Petitioner be dismissed without a hearing.

II. **WHETHER THE TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE AUTHENTICITY OR THE ALTERATIONS PERFORMED ON THE ORIGINAL VHS SURVEILLANCE TAPE?**

The Petitioner alleges that trial counsel was ineffective for not objecting to the authenticity of the VHS tape or to the alterations performed on the VHS surveillance tape. The Petitioner's assertion that he is entitled to relief on this issue is without merit and must fail.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner

must meet a two-prong test. The Petitioner must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 687.

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Id. at 688. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, because substantial deference is to be accorded to counsel's tactical decisions. United States v. Weiner, 127 F.Supp 2d 645, 648 (M.D. Pa. 2001). A decision supported by reasonable professional judgment does not constitute ineffective assistance of counsel. It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartley v. Vaughn, 186 F.3d 367, 372 (3d cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. Strickland, supra, at 694. In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before the judge or jury." Strickland, supra, at 695. However, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

At the time the Pennsylvania State Courts reviewed the ineffectiveness claim raised by the Petitioner, Strickland's two pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to

Strickland. *See* Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005); *see also* Werts v. Vaughn, 228 F.3d 178, 204 (3d. Cir. 2000).

In the present case, the Petitioner alleges that trial counsel was ineffective for failing to object to the authenticity of the VHS tape and for not objecting to the alterations performed on the tape. The Petitioner's claim is nothing more than a bald assertion unsupported by the record. At trial, Counsel for the Petitioner brought to the Court's attention, the Petitioner's desire to challenge the authenticity of the VHS tape. *See* RRR at 174-75. In January of 2009, which was prior to the commencement of the jury trial, counsel for the Petitioner, the Petitioner, and counsel for the Commonwealth viewed the VHS tape in Chambers. RRR at 175. However, on the day of trial when the VHS was shown to the jury, the Petitioner alleged that what they watched in January was not what was played to the jury. RRR at 175. However, Counsel for the Petitioner stated to the Trial Judge, on the Record, that what he viewed in January was the same thing that was played to the jury and did not want to be a witness in his own trial and asked the Trial Judge for guidance. RRR at p. 175. It was suggested that if the Petitioner wanted to challenge the authenticity of the tape, either he would have to take the stand or call another witness who viewed the tape. RRR at 175. At that time the Petitioner was going to take the stand on his own behalf and provide testimony regarding the tampered VHS tape. RRR at 179. However, at some point in time, the Petitioner elected not to testify and raise the issue on his on behalf. RRR at 189. Additionally, Trial Counsel presented the testimony of Eloise White, the Petitioner's mother who testified that the man in the video could not have been her son. RRR at 195.

More importantly, Counsel for the Petitioner cross-examined Corporal McCune about the operation of the cameras, access to the footage, and how the surveillance was recorded. RRR at 117-21. Corporal McCune explained the difference between the VHS and the DVD versions of the Petitioner trying to break into the Judicial Center. RRR at 113-14. Corporal McCune also testified that he did not alter the footage that was captured in any way. RRR at 115. As stated above, the Petitioner makes a bald allegation, which is unsupported by the record. The Petitioner has the burden to show that but for counsel's acts and omissions, the outcome of the trial would have been different. Here, the Petitioner has failed to meet that burden. Surveillance cameras, which were being monitored by the Deputy Sheriffs, recorded a person trying to break into the Judicial Center and upon apprehending that person, it turned out to be the Petitioner. With that evidence that was place before the jury, there is no way that the outcome would have been any different. Therefore, the Petitioner's claim that trial counsel was ineffective for failing to object to the authenticity of the VHS tape and for failing to object to the tampered VHS tape is without merit and must fail.

III.    DID THE COMMONWEALTH VIOLATE THE PETITIONER'S SPPEDY TRIAL RIGHTS WHEN THE COMMONWEALTH FAILED TO BRING THE PETITIONER TO TRIAL WITHIN 365 DAYS OF THE CHARGES BEING FILED?

Next, the petitioner claims that the Commonwealth violated his speedy trial rights when the Commonwealth failed to bring his case to trial within 365 days of the charges being filed. This claim too is without merit and must fail. As the Trial Court found, the Commonwealth mad a diligent effort to bring the Petitioner to trial. Rule 600 of the Pennsylvania Rules of Criminal Procedure states in pertinent part:

> (3) Trial in a court case in which a written complaint is filed against the defendant. When the defendant is at liberty on bail. Shall commence no later than 365 days from the date on which the complaint is filed.
>
> &ast; &ast; &ast;
>
> (C) In determining the period for commencement of trial, there shall be excluded therefrom:
> (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;
> (2) any period of time for which the defendant expressly waives Rule 600;
> (3) such period of delay at any stage of the proceedings as a result from:
>     a. the unavailability of the defendant or the defendant's attorney;
>     b. any continuance granted at the request of the defendant or the defendant's attorney.

Pa.R.Crim.P. 600. Pursuant to this rule, the Trial Court was required to exclude from its calculations, any time when the Petitioner or his attorney were unavailable or any time where the Petitioner expressly waived Rule 600.

In the present case, the Petitioner was arrested and charged on March 17, 2008. Therefore, the Petitioner's mechanical Rule 600 run date would have been March 17, 2009. The Petitioner's trial commenced on May 11, 2009. That is approximately fifty-five (55) days after the mechanical Rule 600 date. However, the Trial Court found that those fifty-five days rune against the Petitioner. Specifically, the Trial Court found that on June 17, 2008, the date of the Petitioner's pretrial conference, the Petitioner's case was listed for trial during the August term of criminal court. RRR at 354. However, Attorney John Neblett filed a motion to withdraw as counsel, which was granted on August 27, 2008. At that time, the Court instructed the Petitioner that the time that passed would not count against the Commonwealth and informed the Petitioner that he could obtain representation from the York County Public Defender's Office. On September 16, 2008, Attorney David MacVeigh entered his appearance on the Petitioner's

behalf. RRR at 345. Then on September 19, 2008, attorney Ronald Gross, Esquire, entered his appearance on the Petitioner's behalf.

Most notably is the fact that Attorney Ronald Gross raised this Rule 600 issue before the Trial Judge prior to the start of the Petitioner's trial. At that time, Attorney Gross indicated that there was no merit to the Petitioner's claim and the Trial Court considered the issue waived. RRR at .3. Additionally, like the Petitioner's Rule 600 motion, the Petitioner filed numerous pro se motions while represented by counsel. As noted by the Trial Court, the reason the Petitioner filed so many pro se motions is because he was not satisfied with his attorney's performance, not because the Commonwealth did not exercise due diligence. RRR at 354. The Trial Court found that the fifty-five days past the Petitioner's mechanical Rule 600 run date were attributable to the Petitioner. As such, the Petitioner's claim to the contrary must fail.

### IV. DID THE COMMONWEALTH FAIL TO TURN OVER EXCULPATORY EVIDENCE TO THE PETITIONER?

The Commonwealth can only assume that the Petitioner is raising the same claim that he raised in his 1925(b) statement to the Trial Court, which is the Commonwealth failed to have the gloves and hat tested for DNA evidence, and the results of which would have exonerated the Petitioner. This claim is nothing more than a bald assertion unsupported by the record and must fail.

At trial, Commonwealth witness Corporal Cyprian Igwe testified that he collected eyeglasses, a hat, and a screwdriver from behind the Judicial Center after the Petitioner was taken into custody. RRR at 125. Corproal Brady testified that when he apprehended the Petitioner, he was wearing a black hoodie, a black knit cap, black gloves, jeans and a pair of dark sneakers or boots. RRR at 151. The evidence that was collected was inventoried and the

Petitioner signed the property inventory form acknowledging the evidence that the Sheriff's Department had in its possession. RRR at 153. Included in that was the black knit hat that the Petitioner is alleging would have exonerated him if the Commonwealth tested this hat for DNA. That allegation is completely absurd. The Petitioner was arrested wearing that hat. His image was captured on video as he tried to pry open the back door of the Judicial Center. The Petitioner's allegation that the Commonwealth failed to turn over exculpatory evidence is patently absurd and warrants no further discussion.

V.     DID THE COMMONWEALTH TAMPER WITH PHYSICAL EVIDNECE?

The Petitioner alleges that the Commonwealth tampered with physical evidence, specifically the VHS video that was played for the jury. This claim too is patently absurd. As stated above, Counsel for the Petitioner stated on the record that the Petitioner wanted to challenge the authenticity of the video, but conceded that the claim was meritless. RRR at 174-175. Additionally, Counsel for the Petitioner questioned Corporal McCune about the operations of the camera, access to the footage, and how the video was recorded. RRR at 117-121. Corporal McCune also testified that he did not tamper with the video in this case. RRR at 115. The Petitioner's allegation by that Commonwealth tampered with physical evidence is nothing more than an absurd allegation unsupported by the record. Therefore, the Petitioner's claim must fail.

VI.     WHETHER DIRECT APPEAL COUNSEL WAS INEFFECTIVE?

The Petitioner alleges that his Sixth Amendment right to a fair cross section for the jury pool was violated when he had to pick from an all white jury panel and he is African American. In order for the Petitioner to be meritorious on a claim such as this, the Pennsylvania Supreme Court states that the Petitioner must demonstrate:

> (1) the group allegedly excluded is a distinctive group in the community; (2) representation of this group in the pool from which juries are selected is unfair and unreasonable to relation to the number of such persons in the community; and (3)the under-representation is due to the systematic exclusion of the group in the jury selection process.

Commonwealth v. Lopez, 739 A.2d 485 (Pa. 1999). However, the United States Supreme Court has stated:

> [i]n order to establish the second prong of the prima facie case, one "must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark of the Sixth Amendment fair cross-section requirement."

Duren v. Missouri, 439 U.S. 357, 364 (1979). It is very clear that the Petitioner has the burden and must show that the jury selection process systematically excludes African Americans. The Petitioner has failed to do that. Therefore, his claim must fail.

## **CONCLUSION**

This Honorable Court should deny Petitioner's *pro se* Petition under **28 U.S.C. §2254** for Writ of Habeas Corpus. The record shows that Petitioner failed to meet the burden of proof required under **28 U.S.C. § 2254(d)** that the State level courts were unreasonable in their application of the law. For all of the foregoing reasons, the Commonwealth asks that this Court deny Petitioner's *pro se* Petition under **28 U.S.C. § 2254** for Writ of Habeas Corpus.

Respectfully submitted,

*/s/ Duane R. Ramseur*
Duane Ramseur
Senior Deputy Prosecutor
Office of the District Attorney
Supreme Court I.D. # 206132
York County Judicial Center
45 North George Street
York, PA 17401
(717) 771-9600

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH ASHFORD | : | No. 3:11-CV-1060 |
| | : | |
| Petitioner | : | (JUDGE NELSON) |
| | : | |
| vs. | : | |
| | : | |
| MIKE WENEROWICZ, ET AL., | : | (Magistrate Judge Smyser) |
| | : | |
| Respondents | : | |

## CERTIFICATE OF SERVICE

I, Duane Ramseur, Senior Deputy Prosecutor for the York County District Attorney's Office, hereby certify that I served a copy of the foregoing **Response to Habeas Corpus Petition, and Respondents Reproduced Record** by placing the same in the United States mail, first class, postage prepaid, and addressed to the following:

Kenneth Ashford
BY-5677
SCI Graterford
P.O. Box 244
Graterford, PA 19426

*(signature)*
Duane Ramseur
Senior Deputy Prosecutor
Office of the District Attorney
Supreme Court I.D. # 206132
York County Judicial Center
45 North George Street
York, PA 17401
(717) 771-9600